UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LINDA MURPHY,
          Plaintiff,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY; LIFE INSURANCE COMPANY OF NORTH AMERICA,

          Defendants.

Case No. 2:13-cv-02295-APG-CWH

**ORDER ON MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

(Dkt. ##25, 28)

Kenneth Murphy was a software engineer for ICP Triplex, Inc. He suffered from a terminal illness and died while employed at ICP. Shortly before his death, Kenneth signed up for a voluntary life insurance policy ("the Voluntary Policy") from defendant Life Insurance Company of North America ("LINA").

After Kenneth died, his wife, plaintiff Linda Murphy ("Murphy"), asked LINA to pay her benefits under the Voluntary Policy. LINA denied the claim, explaining that the Voluntary Policy never went into effect. Murphy then filed this lawsuit challenging LINA's denial and seeking a bench trial on the administrative record.[1]

I find that LINA correctly denied Murphy's claim. The Voluntary Policy could not go into effect unless Kenneth was "actively working" for ICP on the relevant enrollment date. Murphy provides scarce evidence that Kenneth was actively working on any of the relevant dates. LINA, in contrast, provides substantial evidence indicating Kenneth was unable to actively work during these periods; hospice and hospital records show that Kenneth's illness was progressing and seriously affecting his mental faculties. Judgment on the administrative record is therefore entered in LINA's favor.

---

[1] Murphy styled her opening brief as a "summary judgment motion." But she later explained in her reply that this document was intended to be an "opening brief" for this bench trial on the administrative record. (*See* Dkt. #30.)

## I.   LEGAL STANDARD: MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD IN AN ERISA CASE

The parties have stipulated that review of LINA's denial is in the form of a bench trial on the record that the administrator had before it.[2] Rather than asking whether there is a genuine issue of fact under Federal Rule of Civil Procedure 56, here I decide the issues of fact.[3] I "evaluate the persuasiveness of conflicting testimony and decide which is more likely true."[4] I then make findings of fact and law under Rule 52(a) and determine which party prevails.[5] I consider only the administrative record that was before LINA.[6]

The parties agree that my review of LINA's denial is *de novo*.[7] Murphy has the burden to prove that she is entitled to benefits under the policy and that LINA improperly denied her claim.[8]

## II.   FINDINGS OF FACT

### 1.   Background

Linda Murphy was Kenneth's wife. Kenneth died on November 2, 2006 of glioblastoma, an aggressive, malignant brain tumor. When he died, Kenneth was an employee if ICS Triplex.

Shortly before his death, Kenneth signed up for two life insurance policies. Early in October of 2006, he signed up for a basic term life insurance policy. Later in October, he

---

[2] *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1091 (9th Cir. 1999).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.* In some situations courts are permitted to consider evidence outside of the administrative record but the parties have not argued to admit extrinsic evidence in this case.

[7] Neither party argues that a discretionary standard applies in this case.

[8] *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) ("[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant."); *Clifford v. Prudential Ins. Co. of Am.*, No. 07–CV–126–ST, 2008 WL 4164750, at *5, *9 (D.Or. Aug.27, 2008) (holding the plaintiff had the burden of proving she was disabled under the plan's terms when the plan terminated her benefits after a reevaluation of her claim); *Gardner v. Bear Creek Corp.*, No. C 06–02822 MHP, 2007 WL 2318969, at *13, *18 (N.D. Cal. Aug.6, 2007) (same).

enrolled in a Voluntary Group Universal Life Insurance Policy (the "Voluntary Policy"). LINA is the plan administrator and insurer of both policies.

After Kenneth died, Murphy requested benefits under both policies. LINA paid benefits under the basic term policy but denied Murphy's claim for benefits under the Voluntary Policy. LINA's explanation for its denial was: (1) the Voluntary Policy required Kenneth to be in "active service" before it could go into effect; and (2) LINA determined that Kenneth was not in "active service" during the relevant time periods. In 2009, Murphy filed a lawsuit challenging LINA's denial and the court remanded back to LINA.

In 2012, LINA again denied Murphy's claim. LINA determined that, based on the evidence in the administrative record, Kenneth was not in "active service" during the period in which the Voluntary Policy could have gone into effect. Thus, LINA concluded the Voluntary Policy never covered Kenneth and Murphy was not entitled to benefits. Murphy then filed this lawsuit challenging LINA's second denial.

### 2. The Voluntary Policy

The Voluntary Policy states that it goes into effect on "the later of: (a) the date [Kenneth] bec[ame] eligible; or (b) the date [LINA] receive[d] the completed and signed enrollment form."[9] The Voluntary Policy clarifies that in addition to being otherwise eligible, Kenneth would not be insured until he met the policy's definition of "active service."[10] The policy states:

> If an Employee is not in Active Service on the date his insurance would otherwise begin, he will become insured on the date he returns to Active Service. If an Employee does not return to Active Service within 90 days from the date we receive the completed original enrollment form, a new enrollment form, and new evidence of good health will be required.[11]

The Voluntary Policy defines "active service" as:

---

[9] (Dkt. #22 at 1162.)

[10] (*Id.* at 1163-64.)

[11] (*Id.*)

> An Employee will be considered in Active Service with the Employer on a day which is one of the Employers' scheduled work days **if he is performing in the usual way all of the usual duties of his work for the Employer on a full-time basis.** Such service can occur at one of the Employer's places of business or at some location to which the Employer's business requires him to travel. An Employee will be deemed in Active Service on a day which is not one of the Employer's scheduled work days only if he was in Active Service on the preceding scheduled work day.[12]

### 3. Evidence regarding the date the Kenneth became eligible

Throughout the administrative process, LINA maintained that Kenneth was not eligible under the Voluntary Policy until October 20, 2006. LINA informed Murphy multiple times that it did not receive Kenneth's Voluntary Policy enrollment form until October 20, 2006. LINA points to the Voluntary Policy enrollment form, which is stamped as received by Administaff (ICP's out-sourced human resources company) on October 16, 2006 and stamped as received by LINA on October 20, 2006.[13] LINA also cites its records which indicate that it received the Voluntary Policy form on October 20, 2006.[14]

Murphy contends that LINA received the relevant enrollment form on either October 3, 2006 or October 14, 2006. LINA points to a "benefits enrollment form" which is dated October 3, 2006 with an effective date of "October 14, 2006."[15] Murphy also cites to a declaration from one of Kenneth's coworkers which states Kenneth signed up for "life insurance benefits" on October 3, 2006.

I find that LINA received the Voluntary Policy enrollment form on or after October 20, 2006. The burden of proof is on Murphy, and she submitted no evidence regarding when LINA received the Voluntary Policy enrollment form. The form she relies on, the "benefits enrollment

---

[12] (*Id.* at 1154 (emphasis added.))

[13] (Dkt. #22 at 1144-45.)

[14] (*Id.*)

[15] (Dkt. #25-2 at 2.)

form," only refers to enrollment under a basic term life insurance policy—not the Voluntary Policy at issue in this case. There is no evidence indicating that this basic life insurance form also enrolled Kenneth for the Voluntary Policy, and in fact Kenneth submitted a separate Voluntary Policy enrollment form. The declaration of Kenneth's co-worker does not address the Voluntary Policy at all. The declaration merely states Kenneth signed up for "life insurance benefits" at a meeting regarding a new "Group Universal Life Insurance plan." There is no evidence indicating that Kenneth signed up for anything more than the basic term plan at that time.

There is no other evidence indicating LINA received the Voluntary Policy enrollment form before October 20, 2006. Administaff received the form on October 16—and there is no evidence or argument to suggest that Administaff's receipt should be imputed to LINA. LINA's records, as well as the face of the Voluntary Policy form, both indicate that LINA received the form on or after October 20, 2006. I therefore find that LINA did not receive the Voluntary Policy enrollment form until October 20, 2006.

### 4. Evidence regarding Kenneth's employment

Murphy provides scant evidence regarding what Kenneth's usual duties were and whether he carried out these duties on either October 14, 2006 (when Murphy argues LINA received the enrollment form) or October 20, 2006 (when LINA argues it received the enrollment form). Kenneth was employed by ICP as a hardware engineer and lead microprocessor application engineer.[16] His duties included, at least, providing technical advice for clients. Starting in 1994, Kenneth worked from home.

Murphy largely relies on a declaration from Tom Deaver, one of Kenneth's co-workers, to establish the nature of Kenneth's work duties and that he continued to work on the relevant dates. But Deaver merely avers that Kenneth "was an employee" and that he was "an active employee until the time of his death."[17] Murphy also points to (1) the pay stubs indicating that

---

[16] (*Id.*)

[17] (Dkt. #25-1 at 2.)

Kenneth continued to be paid until his death and (2) a form filled out by Administaff which states he was "active" and "full time" until he died on November 2, 2006.[18]

LINA counters with medical records from Kenneth's hospice workers and hospital providers. This evidence shows that Kenneth's health steadily deteriorated from September 9, 2006 (when Kenneth began receiving home hospice care) until his death on November 2, 2006. On October 3, Kenneth was reported as "confused," "mildly paranoid," and suffering from "anxiety" and "seizures."[19] On October 14, Kenneth continued to receive daily hospice care including assistance with basic tasks such as bathing, nail care, skin care, oral hygiene, and tidying up of his living area.[20] On October 19, 2006, Kenneth was admitted to Progressive Hospital because his wife was no longer able to care for him on her own.[21] The following day, Kenneth was "unresponsive"[22] and in "imminent death."[23] His family requested spiritual services.[24] Kenneth continued to decline until October 31, 2006, when he could no longer "hold his head up," and died on November 2, 2006.

### III.   CONCLUSIONS OF LAW

Murphy has the burden of proving she is entitled to benefits under the terms of the Voluntary Policy. Specifically, she has the burden of proving that Kenneth was in "active service" on the day the policy was to go into effect (which, under the policy, is the day LINA received the enrollment form). To be in "active service" Kenneth must have been working for ICP "in the usual way [doing] all of the usual duties of his work for the Employer on a full-time basis."

---

[18] (Dkt. #25-7 at 2.)
[19] (Dkt. #22 at 916.)
[20] (*Id. at* 898.)
[21] (*Id.* at 850.)
[22] (*Id.* at 882.)
[23] (*Id.* at 939.)
[24] (*Id.*)

1    Murphy has provided little evidence regarding the nature of Kenneth's duties, or more
2 importantly, whether Kenneth continued to perform those duties "in the usual way" on the date
3 LINA received the enrollment form.  Neither the Administaff form nor Deaver's testimony
4 provides sufficient evidence for me to find that Kenneth performed his duties "in the usual way"
5 on any of dates LINA may have received the enrollment form.  Deaver's affidavit does not
6 indicate he had personal knowledge of Kenneth's work activities.  Even if it did, his bare
7 statement that Kenneth was "active" and "employed" sheds little light on whether Kenneth was
8 doing his "usual" duties in the "usual" way on a full-time basis.

9    I also give little weight to the Administaff form.  The form indicates Kenneth was "active"
10 and "full time" up until November 2, 2006.  But Murphy provides no evidence or argument
11 showing that whoever filled out this form had personal knowledge of Kenneth's work activities or
12 intended to incorporate the meaning of "active services" as it is used in the Voluntary Policy.[25]
13 Likewise, the mere fact that ICP continued to pay Kenneth until his death has little probative
14 value in determining whether he was actually performing his work duties in the usual manner.

15   Even if Administaff or ICP considered Kenneth to be a full-time or active employee, that
16 would not prove he was performing his duties "in the usual way" and "usual manner" as the
17 Voluntary Policy's "active service" term requires.  Murphy did not submit evidence from anyone
18 with personal knowledge of Kenneth's daily activities on the relevant dates.  For example, there is
19 no evidence from Kenneth, his wife, his caregivers, his supervisors, or his coworkers describing
20 any of the work duties Kenneth was performing on the relevant dates.  Even ignoring LINA's
21 evidence, Murphy has failed to meet her burden to prove she is entitled to benefits.

22   LINA's evidence bolsters this conclusion.  The hospice and hospital records indicate that,
23 on all of the relevant dates, Kenneth was unlikely to be able to carry out any sort of work duties

---

[25] Additionally, there is no evidence or argument indicating who filled out this form or what facts were considered by the person filling it out.  And while the form states that Kenneth worked full time and actively until his death on November 2, 2006, the medical records indicate that he could not lift his head on October 31, 2006.  The information in the form is clearly not based on personal knowledge of Kenneth's work activities or his health.

"in the usual way" on a "full time" basis. On October 20, 2006, the date I found that LINA received the Voluntary Policy enrollment form, Kenneth was admitted into a hospital and "unresponsive." Even if I were to consider the dates Murphy proposes as the relevant date of receipt (October 3 or October 14, 2006), Kenneth was in daily hospice care and noted to have mental faculty issues. Care workers assisted with his basic bathing and subsistence needs. Perhaps it is possible that Kenneth was able to carry out his duties on a full-time basis in the usual manner despite his declining health, but it appears highly unlikely. And Murphy has not provided sufficient evidence to prove this was the case.

Murphy has not met her burden of proof. I therefore rule in LINA's favor and find that it properly denied benefits to Murphy under the Voluntary Policy.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that defendant Life Insurance Company of North America's motion for judgment on the pleadings and administrative record (Dkt. #28) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Dkt. #25) is DENIED.

IT IS FURTHER ORDERED judgment is entered in favor of the Life Insurance Company of North America.

DATED this 23rd day of March, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE